IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANHEIM AUTOMOTIVE FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMER LEASING SALES, INC., AMIR HOSSEINI, MARZIEH HOSSEINI, ROY BAMBOUYANI, AMERICAN CAR EXCHANGE, INC., HOSSEIN OBAEI, and MARJAN OBAEI, <br><br> Defendants. | Case No. 05 C 2883 <br><br> HONORABLE CHARLES R. NORGLE |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the court is Plaintiff's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, Plaintiff's Motion for Summary Judgment is granted.

**I. BACKGROUND[1]**

**A. Facts**

This case arises out of a financing agreement between Plaintiff Manheim Automotive Financial Services, Inc. ("Manheim"), and Defendants Amer Leasing Sales, Inc. ("Amer"), American Car Exchange ("American"), Hossein and Marjan Obaei (the "Obaeis"), and Amir and Marzieh Hosseini (the "Hosseinis"). Manheim is a Delaware corporation with its principal place

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

of business in Atlanta, Georgia. Amer and American are Illinois corporations with their principal places of business in Cook County, Illinois. The individual Defendants are all citizens of Illinois.

Manheim agreed to finance the acquisition of automobiles for Amer and American. The Note provided that:

> [F]or the purpose of securing any indebtedness under this Agreement, any other indebtedness of Borrower to Lender, or any indebtedness whatsoever of anyone who has guaranteed Borrower's indebtedness to Lender, Borrower hereby grants Lender a security interest in all Vehicle inventory, part and accessories inventory, equipment, fixtures, accounts, hold back reserves, manufacturer rebates and incentive payments, accounts, payment intangibles, securities, and security accounts, and general intangibles of the Borrower now owned and hereafter acquired, wherever located.

On January 18, 2005, Amer executed a Promissory Note for $1,800,00.00 in favor of Manheim (the "Amer Note"). The Note provides that Amer shall pay regular monthly installments of interest only on the 15th of each month beginning in February 2005. Additionally, Amer executed a Security Agreement, which defined a default, *inter alia*, as "any representation or warranty, whether made in or pursuant to this Agreement or any other obligation or debt to Lender, which is found to be untrue in any material respect . . . ." The Hosseinis unconditionally guaranteed full payment of Amer's debt to Manheim. The guarantee provides that

> [T]he guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection and that its obligations hereunder shall be absolute [and] unconditional . . .
> The Guarantor further agrees to pay all expenses, including without limitation, attorney's fees and court costs, paid or accrued by Secured Party in endeavoring to collect the indebtedness, or any part thereof, and in enforcing the Guaranty. . .

On October 2, 2002, American executed a Promissory Note with Manheim in the amount

of $800,000.00 (the "American" Note). The terms of this note were identical to the Amer Note, with the exception that American's payments were due on the 15th of each month, beginning in November 2002. American also executed a Security Agreement that defined a default in the same manner as the Amer Note. The Obaeis unconditionally guaranteed payment of American's debt to Manheim. This guarantee includes the same clauses as in the Hosseinis' personal guarantee.

Then, on March 22, 2005, the federal government seized 157 vehicles from Amer and American pursuant to a search warrant. After the government took possession of the vehicles, Manheim took possession of 181 remaining automobiles that were in the control of Amer and American as part of the collateral used to secure the security agreement. According to Manheim, the seized vehicles have been sold and the U.S. Marshalls are holding the proceeds in escrow, in an interest bearing account subject to further court order. Manheim states that $1,127,003.60 plus interest is being held in the escrow account from the sale of Amer's cars, and $368,816.00 from the sale of American's cars. All of Manheim's liens, claims, and rights to the seized vehicles are attached to these proceeds.

Additionally, Manheim represents that while some of the 181 vehicles it seized from Amer and American have been sold, it has not been able to sell a portion of these cars due to title issues. A separate escrow account was created to hold the proceeds of the sale of the additional cars. After the Defendants received credit for the amount already paid to Manheim from the additional vehicle escrow account, the principal and interest due equals $1,252,207.77 from Amer Leasing, and $324,447.59 from American.

On February 26, 2007, after a five week jury trial, Amer Hosseini and Hossein Obaei were convicted on ninety-seven counts alleged in a superseding indictment. Specifically,

3

Hosseini and Obaei were charged with: a) a racketeering conspiracy; b) aiding and abetting a narcotics trafficking conspiracy; c) money laundering; d) structuring; e) bank fraud; and f) mail fraud. The government requested an order of forfeiture providing that both men forfeit their interests in the racketeering enterprise, plus $10,000 against Hosseini and $1,000,000 against Obaei. Manheim alleges that as result of the Hosseinis' and Obei's failure to pay on their respective Notes, it has incurred attorney's fees and expenses to collect the debt in the amount of $96,956.13.

**B. Procedural History**

On May 13, 2005, Manheim filed its Complaint in the Northern District of Illinois, alleging that Amer and American defaulted on their Promissory Notes and Security Agreements, breach of the Hosseinis' and Roy Bambouyani's ("Bambouyani") personal guarantee of Amer's debt to Manheim, and that the Obaeis breached their personal guarantee of American's debt to Manheim. On July 10, 2007, Manheim filed its motion for summary judgment. The Obaeis and American filed their Response on August 10, 2007, and Manheim Replied on August 31, 2007. The Hosseinis and American did not file a Response. The motion for summary judgment is fully briefed and before the court.

## II. DISCUSSION

**A. Standard of Review**

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Vukadinovich v. Bd. of Sch. Tr.'s of North

Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Plaintiff's Motion for Summary Judgment

### *1. Defendants' do not oppose the motion*

As a preliminary matter, the court notes that the Obaeis and American do not oppose Manheim's Motion for Summary Judgment. In Defendants' two-page, three paragraph Response, they state that "Defendants do not quarrel with the basics of the motion . . . ." Defs.'s Resp., ¶ 1. The only issue Defendants raise is the amount of attorney's fees and the apportionment of liability between Obaei and Hosseini. Therefore, Manheim's statements in its Local Rule 56.1 submission are deemed admitted. See Swanson v. Allstate Ins. Co., 102 F. Supp. 2d 949, 954 (N.D. Ill. 2000); see also Corder v. Lucent Technologies, Inc., 162 F.3d 924 (7th Cir. 1998).

However, simply because Defendants have not controverted Manheim's motion, or complied with Local Rule 56.1, does not mean the court will grant Manheim's motion. "A nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant." Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006) (citing Reales v. Consol. Rail Corp., 84 F.3d 993, 996 (7th Cir. 1996)). Ultimately, "the burden of persuasion remains with [Manheim] to show that it is entitled to judgment as a matter of law." Id. (citing Wienco, Inc. v. Katahn Assocs., Inc., 965 F.2d 565, 568 (7th Cir. 1992)). Therefore, the court will analyze Manheim's motion despite the lack of opposition.

### *2. No genuine question of fact remains*

Manheim argues that the undisputed facts entitle it to a judgment as a matter of law. In support of this argument, Manheim attaches the American and Amer Notes and Security Agreements, signed by Mr. Obaei, as well as the individual guarantees between Amer and

6

Manheim, signed by Amir and Marzieh Hosseini. See Pl.'s Stmt. of Mat. Facts, Exs. 4, 5, 10, 11, 12. Based upon these documents, Manheim has proven that Amer and American entered into a valid financing agreement, and that Manheim has an interest in the collateral. It is further undisputed that the Hosseinis and Obaeis personally guaranteed the loan to Manheim, and that Manheim has a security interest in the remaining vehicles. As a result, "no reasonable jury could find for the non moving party" in this case. See Raymond, 442 F.3d at 608 (citing Rogers v. City of Chicago, 320 F.3d 748, 752 (7th Cir. 2003)).

Moreover, the court does not find Defendants' Affirmative Defenses persuasive. Defendants' impossibility defense fails to create any issue. Specifically, Defendants argue as an affirmative defense that "the seizure of the financed vehicles by government entities was a supervening event which could not have been reasonably foreseen, and its non-occurrence was a basic assumption on which the contracts were made." Answer, at 7, ¶ 3.

Under Illinois contract law, the doctrine of impossibility of performance will apply "if there is an unanticipated circumstance that has made the performance of the promise vitally different from what should reasonably have been within the contemplation of the parties when the contract was entered." Illinois-American Water Co. v. City of Peoria, 774 N.E. 2d 383, 391 (Ill. App. Ct. 2002). However, the impossibility defense requires that "the circumstances creating the impossibility were not . . . anticipated by the parties, [and] that the party asserting the doctrine did not contribute to the circumstances . . . ." Id. Here, Hosseini and Obaei directly contributed to the intervening cause, i.e., the government seizure of the automobiles, by engaging in criminal activity. Both men were found guilty at a jury trial of a racketeering conspiracy, aiding and abetting a narcotics trafficking conspiracy, money laundering, and bank and mail

fraud. It is undisputed that Hosseini and Obaei directly contributed to the event causing the impossibility of performance. Therefore, such a defense is unavailable to them.

Next, Defendants allege that Manheim failed to mitigate its damages by not suing the government. Answer, at 8. The court finds this argument unpersuasive. The government seized the vehicles on March 22, 2005. Manheim asserts that it immediately alerted the government of its interests in the automobiles, and requested a release of the collateral. Manheim sent subsequent letters to the government on March 28, April 7, and April 15, 2005. However, the government did not release the cars during the criminal trial. The government did agree to an interlocutory sale of the seized vehicles to avoid unnecessary deprecation and costs. See Pl.'s Stmt. of Mat. Facts, Ex. 7. Manheim has established that it did in fact attempt to mitigate any damages incurred, through the sale of a portion of the 181 automobiles it seized from Defendants subsequent to the government's own seizure. As a result, Defendants' mitigation defense fails as a matter of law.

## C. Attorney's Fees

Lastly, Defendants argue that Manheim's attorney's fees of $96,956.13 is excessive given this type of case. Defs.'s Resp., ¶ 3. Defendants further argue that "Obaei represents 22.2% of the total fees claim, and Hosseini represents the balance, 87.8%." Def.'s Resp., ¶ 1. The court is not persuaded by Defendants' argument. Defendants offer no evidence that the parties agreed to any apportionment of liability. The personal guarantees signed by Defendants include clauses for the Guarantor to pay attorneys fees, "incurred by Secured Party in endeavoring to collect the indebtedness. . . ." Pl.'s Stmt. of Mat. Facts, Ex. 10. Additionally, Both Obaei and Hosseini were jointly convicted in the federal criminal trial. Therefore, they are jointly and severably liable for attorney's fees and costs in this case.

## III. CONCLUSION

For the reasons stated above, the court grants Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 10/8/07